UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 9:14-CV-81062-ROSENBERG/BRANNON

HOWARD BERNSTEIN,

    Plaintiff,

v.

MARY MALLOY & QUESTEX MEDIA
GROUP, LLC,

    Defendants.
_____/

### ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

This matter is before the Court on Defendants' Motion for Partial Summary Judgment [DE 42]. The Motion has been fully briefed by both sides. The Court has reviewed the documents in the case file and is fully advised in the premises. For the reasons set forth below, the Motion is denied.

### I.  BACKGROUND

Plaintiff is in independent sales consultant. In June of 2014 Plaintiff worked for two separate entities: BITAC, Inc. and MTI. Also in June of 2014, Plaintiff attended a conference that was hosted by Defendant Questex Media Group. Questex is a direct competitor of BITAC. Plaintiff attended the conference in his capacity as a consultant for MTI.

Defendant Malloy learned of Plaintiff's attendance at the conference. Because Malloy also learned that Plaintiff was a consultant for Questex's competitor, BITAC, Malloy sent an e-mail to many participants at the conference, warning them of the presence of Malloy. That e-mail is the primary focus of this suit, and Plaintiff contends that the e-mail contained defamatory comments.

1

Soon after the e-mail at issue was sent, Plaintiff resigned from his position at BITAC. At issue in the Motion before the Court is whether Plaintiff's resignation was voluntary and whether Plaintiff's resignation was caused by the alleged defamatory comments.

## II.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The existence of a factual dispute is not by itself sufficient grounds to defeat a motion for summary judgment; rather, "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A dispute is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing *Anderson*, 477 U.S. at 247-48). A fact is material if "it would affect the outcome of the suit under the governing law ." *Id.* (citing *Anderson*, 477 U.S. at 247-48).

In deciding a summary judgment motion, the Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). The Court does not weigh conflicting evidence. *See Skop v. City of Atlanta*, 485 F.3d 1130, 1140 (11th Cir. 2007). Thus, upon discovering a genuine dispute of material fact, the Court must deny summary judgment. *See id.*

The moving party bears the initial burden of showing the absence of a genuine dispute of material fact. *See Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Once the moving party satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., LLC*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574,

586 (1986)). Instead, "[t]he non-moving party must make a sufficient showing on each essential element of the case for which he has the burden of proof." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Accordingly, the non-moving party must produce evidence, going beyond the pleadings, to show that a reasonable jury could find in favor of that party. *See Shiver*, 549 F.3d at 1343.

### III.   ANALYSIS AND CONCLUSION

Defendants argue that they are entitled to judgment as a matter of law as to two counts: Plaintiff's defamation count and Plaintiff's tortious business interference count. With respect to defamation, in Florida, in order to establish a cause of action for defamation, a plaintiff must show that "(1) the defendant published a false statement about the plaintiff, (2) to a third party, and (3) the falsity of the statement caused injury to the plaintiff." *NITV, L.L.C. v. Baker*, 61 So. 3d 1249, 1252 (Fla. 4th DCA 2011) (citations omitted). Thus, "to recover for defamation, a plaintiff must show that damages were proximately caused by the defamatory statements." *Cape Publ'ns, Inc. v. Reakes*, 840 So. 2d 277, 281 (Fla. 5th DCA 2003) (citing *Smith v. Cuban Am. Nat'l Found.*, 731 So. 2d 702, 705 (Fla. 3d DCA 1999)). Defendants argue that the third element, causation, has not been met by Plaintiff in this case as a matter of law.

With respect to Plaintiff's tortious business interference count, "The elements of tortious interference with business relationships are (1) the existence of a business relationship ... (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1995). "As a general rule, an action for tortious interference with a business relationship requires a business relationship evidenced by an actual and identifiable understanding or agreement which in all

3

probability would have been completed *if the defendant had not interfered.*" *Id.* at 815 (emphasis added). "Imbedded within these elements is **the requirement that the plaintiff establish that the defendant's conduct caused or induced the breach that resulted in the plaintiff's damages**." *Chicago Title Ins. Co. v. Alday-Donalson Title Co. of Fla., Inc.*, 832 So. 2d 810, 814 (Fla. 2d DCA 2002) (emphasis added). As with Plaintiff's defamation claim, Defendants again argue that causation (here, the fourth element of tortious business interference, whether Defendants caused damages) has not been met by Plaintiff as a matter of law.

Defendants' causation argument is premised upon two contentions. First, that Plaintiff chose to quit his job. Second, even if Plaintiff was fired (or forced to resign), he was not fired as a result of Defendants' alleged defamatory statements. If Defendants' argument on either of these points is correct, and if there is no dispute of material fact as to these points, Defendants could be entitled to judgment as a matter of law according to the elements more specifically delineated above.

With respect to whether Plaintiff voluntarily quit his job, Defendants' arguments on this point were filed with the Court prior to the availability of a transcript of Plaintiff's deposition. Since that time, Plaintiff's deposition has been filed. Construing all inferences in favor of Plaintiff, the deposition testimony of Plaintiff presents an issue of material fact as to whether Plaintiff voluntarily quit his job or whether he was forced to resign:

> Q But you are positive that it happened after Mary Malloy wrote her email?
>
> A Yes, absolutely. I remember specifically speaking to Rich Viola, because when I initially first said to him if you want my resignation, he said back to me, "No, I don't want it. We don't have to go there right now."
>
> Q This was before the email?
>
> A Before the email and before the Facebook.
>
> Q Before those things?

4

> A Before those things. And then all of a sudden he got it and he said, "I'm going to have to take your resignation and take you up on your offer." If you will.
>
> Q And he said, "But I'll let you say you're voluntarily withdrawing or resigning." Right?
>
> A It didn't even go down. It wasn't even said that way. It was just I offered it. And then after seeing these emails and the way people were responding he said, "I'm going to have to take you up on your offer."
>
> Q Before that he didn't?
>
> A No, absolutely not.
>
> Q He was going to work with you?
>
> A Absolutely, he definitely was going to work with me. You don't bite off the hand that just gave you 300,000 grand.
>
> Q At the onset of this, if Mary Malloy hadn't written this email –
>
> A I'd still have a job today.

DE 50-1 at 275-76.  The Court must construe all factual inferences in Plaintiff's favor.  The Court therefore finds that an issue of material fact remains as to whether Plaintiff voluntarily quit his job or whether was forced to resign.  As such, the Court cannot grant partial summary judgment on this basis.

With respect to whether Plaintiff's termination was caused by Defendants' alleged defamatory statements, Defendants principally rely on the following deposition testimony of the CEO of BITAC:

> Q At the time -- prior to the time that you received the e-mail from Ms. Malloy to Mr. Bernstein, among other people, had you already determined that you were going to terminate Mr. Bernstein's relationship and Matrix's relationship with HOTEL Interactive?
>
> A Yes.
>
> Q Did Ms. Malloy's e-mail change that decision?

5

A No. It didn't change it but it certainly underscored it.

DE 40-1 at 65-66. At first appearances, it would therefore seem that evidence does establish that the alleged defamatory comments in this case did not cause Plaintiff's termination (with respect to BITAC), and it would instead appear that Plaintiff's unilateral choice to attend the Questex conference caused his termination. Plaintiff counters this evidence, however, by citing to a different portion of the deposition transcript of BITAC's CEO:

> Q Now, have you ever forgiven somebody for making a mistake when you find out all the facts?
>
> A All the time.
>
> Q Okay. And so in this instance, for example, let's walk through this. If Mary Malloy hadn't written this e-mail that circulated to all these people and instead had gone to counsel or whatever to try to prevent Mr. Bernstein from using some of her information or lists if that was necessary or had simply called you and said, "Look, I don't want him using this list. Please get it returned to me," whatever other way she could have handled it, and you sat down with Mr. Bernstein and he apologized and he explained to you how he hadn't thought through that implication, is it possible you would have forgiven him and probable that you would have retained him?
>
> A There was some damage done but I'm an open-minded person.
>
> Q Okay. So it's certainly probable in this instance that had all of this mess by Mary Malloy and the e-mail not occurred, you could have sat down with Mr. Bernstein, heard his position, heard his apology and kept him employed?
>
> A It's possible.
>
> Q Okay. Do you believe that would have happened under those circumstances?
>
> A It's possible.
>
> Q Without her e-mail?
>
> A It's possible.
>
> Q But because of her e-mail, that sealed Mr. Bernstein's fate, didn't it?

>A It did.
>
>. . .
>
>Q And you said it was the culmination of everything that led to your decision to let him go, correct?
>
>A Correct.
>
>Q Everything includes the e-mail that Mary Malloy sent out 1:18 p.m. on June 20, 2014, correct?
>
>A Yes.

DE 40-1 at 137-39, 163-64.  Construing all inferences in favor of Plaintiff, the Court therefore finds that a question of material fact remains as to whether the alleged defamatory comments at issue in this case caused Plaintiff to lose his employment.  As such, the Court cannot grant partial summary judgment on this basis.

In summary, questions of material fact remain and, as a result, it is **ORDERED AND ADJUDGED** that Defendants' Motion for Partial Summary Judgment [DE 42] is **DENIED**.

**DONE and ORDERED** in Chambers, Fort Pierce, Florida, this 14th day of July, 2015.

_____
ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to: Counsel of Record